IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RONALD SCIORTINO, *on behalf of himself and all others similarly situated,* | : : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| BARRETT DAFFIN FRAPPIE LEVIN & BROCK, LLP, | : : : | CIVIL ACTION NO. 1:12-CV-1322-AT |
| Defendant. | : : | |

# **ORDER**

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R"), [Doc. 13], regarding Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), [Doc. 7]. Plaintiff has filed comprehensive and specific objections to the Magistrate's R&R, and Defendant has filed a detailed reply to the objections. [Docs. 15, 17.][1]

## **I.   STANDARD OF REVIEW**

After conducting a careful and complete review of a Magistrate Judge's findings and recommendations, a District Judge may accept, reject, or modify a Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Williams v. Wainwright,* 681 F.2d 732

---

[1] Plaintiff has also filed a notice of supplemental authority, styled as a Motion to Supplement Response in Opposition to Defendant's Motion to Dismiss [Doc. 18]. Defendant responded with a Motion to File Supplemental Brief [Doc. 21]. The Court **GRANTS** both motions [Docs. 18, 21].

(11th Cir. 1982), *cert. denied,* 459 U.S. 1112 (1983).  Those portions of a report and recommendation to which an objection is not asserted are reviewed for plain error.  28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 154.  However, a District Judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *Thomas*, 474 U.S. at 154.  The District Judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.,* 896 F.2d 507, 512 (11th Cir. 1990).

As Plaintiff filed objections to the entirety of Magistrate's Report and Recommendation, (Doc. 15), the Court reviews the Report and Recommendation on a *de novo* basis.  After conducting a *de novo* review of the Defendant's Motion to Dismiss, the parties' briefing, the record in this matter, as well as the record and the Magistrate Judge's legal analysis, the Court declines to adopt the Magistrate Judge's findings, analysis, and recommendations.

The Court must construe the pleadings of a complaint broadly and in the light most favorable to the Plaintiff in reviewing a motion to dismiss.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  Although a Plaintiff is not required to provide "detailed factual allegations" to survive a motion to dismiss, the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

"Stating a plausible claim for relief requires pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged': which means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court also considers the exhibits attached to both the Complaint in this case and the Amended Complaint in Plaintiff's companion case, *Sciortino v. Nationstar Mortgage, LLC*, No. 1:12-CV-1563-AT-WEJ.[2]

## II.   FACTUAL BACKGROUND[3]

In 2006, Plaintiff borrowed $371,600 to purchase real property located in Gwinnett County, Georgia, executing a promissory note ("Note") in favor of the lender. (Compl., Doc. 1 ¶¶ 2, 8.) Plaintiff defaulted on the Note in July 2010. (*Id.* ¶ 9.) The collection efforts that followed serve as the basis for Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

According to Plaintiff, after the loan was in default, a company called Nationstar Mortgage, LLC ("Nationstar")[4] received an assignment of the servicing rights of Plaintiff's loan in December 2010. (*Id.* ¶¶ 1, 10.) In addition, Mortgage

---

[2] The exhibits attached to the companion case are a matter of public record in this Court, filed by the Plaintiff. Both parties concur that the exhibits are authentic and correct copies of documents transmitted by Defendant here or Nationstar.

[3] The factual background herein is provided for context purposes only. The facts are mostly derived from the Amended Complaint and attachments thereto and deemed true for purposes of Defendant's Motion to Dismiss.

[4] Nationstar is the named Defendant in Plaintiff's companion case, No. 1:12-cv-1563-AT. The Court addresses the Nationstar case in a separate Order.

Electronic Registration Systems, Inc. ("MERS") as nominee for the original lender, executed in favor of Nationstar a document called "ASSIGNMENT OF MORTGAGE DEED," which purported to "convey, grant, sell, assign, transfer and set over the described mortgage/deed together with certain note(s) described therein together with all interest secured thereby." (*Sciortino*, No. 1:12-CV-01563-AT-WEJ, Am. Compl. Ex. B, Doc. 8-2 ("Assignment"), at 2.)[5] Then on August 15, 2011, Nationstar sent Plaintiff a debt-collection letter ("August Letter") in which Nationstar identified the Federal National Mortgage Association ("Fannie Mae") as the "Creditor to whom the debt is owed" and Nationstar itself as "Servicer" of the loan. (Compl. Ex. C, Doc. 1-3.)

By November 2011, however, Defendant law firm was the entity sending debt-collection letters to Plaintiff. The first such letter Plaintiff received from Defendant law firm, dated November 2, 2011 ("November 2 Letter"), demanded immediate payment of $385,967.40 and informed plaintiff that Nationstar had authorized Defendant law firm to "initiate legal proceedings in connection with the collection of a debt associated with a Note and Security Deed." (*Id.* Ex. A; *see also id.* ¶ 15.) The November 2 Letter failed to identify the lender to whom the debt was owed. (*Id.* ¶ 12; *id.* Ex. A.) The second letter, dated November 3, 2011 ("November 3 Letter") identified Nationstar, rather than Fannie Mae, as the

---

[5] The record of the assignment of the security interest is attached as Exhibit to the Amended Complaint (Doc. 8-2 at 2.) in the companion case filed by Plaintiff, *Sciortino v. Nationstar Mortgage, LLC*, No. 1:12-CV-1563-AT-WEJ. The Defendant in the instant case does not dispute that Nationstar received the assignment after Plaintiff's default on the mortgage loan. (Doc. 7 at 8.)

"'lender' . . . to whom the debt was owed." (*Id.* ¶ 20 (quoting *id.* Ex. B, Doc. 1-2).) Fannie Mae is not mentioned in the November 3 Letter. (*Id.* Ex. B, Doc. 1-2.)

## III. DISCUSSION

### A. *Plaintiff's Claims and Defendant's Motion to Dismiss*

Plaintiff claims that Defendant's two November letters violated the FDCPA and puts forth two, interrelated theories for recovery. First, Plaintiff asserts that Defendant violated § 1692g(a)(2) by failing to disclose the identity of his creditor on either letter. Pursuant to § 1692g(a)(2), a debt collector has five days after its initial communication with the consumer to provide the consumer with written notice identifying, *inter alia*, "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). Defendant's first debt-collection letter, with no mention of the creditor's identity, was received on November 2, 2011. According to Plaintiff, Defendant's next letter, although within the five day period, failed to identify his actual creditor, Fannie Mae, and instead identified his loan servicer, Nationstar.

Second, Plaintiff alleges that Defendant's November 3 Letter violated § 1692e, prohibiting the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt." (Compl. ¶¶ 24, 26.) According to Plaintiff, Defendant falsely and improperly represented that Nationstar (rather than Fannie Mae) was the creditor on a debt for which it was demanding payment.

The Defendant law firm moved to dismiss Plaintiff's claims on the sole basis that Nationstar was Plaintiff's creditor, as that term is defined in the FDCPA.[6] Thus, according to Defendant, it accurately identified Nationstar as the creditor of the debt in its November 3 Letter, satisfying its obligation under § 1692g(a)(2) and consistent with § 1692e. The dispositive issue here, therefore, is whether Nationstar is a creditor for purposes of the FDCPA under the factual circumstances alleged by Plaintiff, as construed in their most favorable light on behalf of Plaintiff.

### B. Legal Analysis

Under the FDCPA, "the term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692(a)(4). Through this provision, the FDCPA excludes from its coverage any entity or person "who offers or extends credit creating a debt or to whom a debt is owed" but then expressly limits that exclusion through

---

[6] To prevail on an FDCPA claim, a plaintiff must show that he

> (1) [has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354 (N.D. Ga. 2011) (alterations in original) (quoting *Buckley v. Bayrock Mortg. Corp.*, No. 1:09–cv–1387–TWT, 2010 WL 476673, *6 (N.D. Ga. Feb. 5, 2010) (Thrash, J., adopting Vineyard, Mag. J.). The Defendant law firm does not contest that it is a "debt collector" or engaged in "debt collection" activity, as expressly stated in its collection letters of November 2011 (Compl. Ex. A, Doc. 1-1 at 2-4 and Ex. B, Doc. 1-12 at 2-5). Its only defense is that its debt collection letters did not constitute a "prohibited act" or a "failure to perform a requirement imposed by the FDCPA."

6

the phrase "but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default *solely for the purpose of facilitating collection of such debt* for another." *Id.* (emphasis added).

The Magistrate Judge, adopting the reasoning advocated by Defendant in its Motion to Dismiss, found that Nationstar was a creditor because Nationstar was not *solely* facilitating debt collection. Defendant directed the Magistrate Judge to the record of the assignment of the security deed, which would support Nationstar's collection of the debt via threat of or initiation of foreclosure proceedings. Based on the assignment of the security deed, the Magistrate Judge explained that Nationstar not only allegedly sought to collect the debt plaintiff owed to Fannie Mae, but also sought to foreclose on Plaintiff's property under the power of non-judicial sale granted in the security deed. Accordingly, the Magistrate Judge concluded that Nationstar had not received the "assignment or transfer" of the debt in default "*solely* for the purpose of facilitating collection of such debt for another." (Doc. 13 at 14.) The Magistrate then concluded as a matter of fact and law that Nationstar sought to enforce its assigned security interest through the initiation of the foreclosure, independent of its debt collection activity on behalf of another, and thus Nationstar should be deemed a "creditor" under the FDCPA. In turn, the Magistrate Judge found that Defendant's November 3 letter representation that Nationstar was the creditor in connection with Plaintiff's debt was not a false representation in violation of § 1692e and satisfied Defendant's obligation under § 1692g(a)(2).

7

In the Court's view, Defendant's argument and the R&R too narrowly construe governing Eleventh Circuit authority and the provisions of the FDCPA. The R&R also prematurely resolves factual issues that would benefit from development through discovery. In the post default mortgage context, the threat of and initiation of foreclosure proceedings may constitute the critical means of "facilitating collection" of the "debt for another." *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461-63 (6th Cir. 2013); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376-77 (4th Cir. 2006).

Plaintiff alleges in his Complaint that Fannie Mae was identified as the creditor and that Nationstar was servicing the loan after the default, as confirmed by the August 15, 2011 collection letter from Nationstar. This leads to the reasonable inference that Nationstar's arrangement with Fannie Mae was to be responsible to collect and make payment demands on the mortgage debt and to communicate or threaten to or in fact initiate foreclosure proceedings as a means to facilitate the collection of funds on the debt owed to Fannie Mae as the true creditor. In this context, the fact that Nationstar was assigned via MERS the security interest in the mortgage debt and deed does not contradict the likelihood or real possibility that any payment collected would be as a result of Nationstar's actions to facilitate the collection of funds to satisfy the debt owed to Fannie Mae, the true creditor. Plaintiff's allegations, as construed in the light most favorable to Plaintiff, as required on review of a motion to dismiss, therefore reasonably raise the inference that Nationstar was acting "solely for the purpose of

8

facilitating collection of [the] debt for another," namely Fannie Mae.  Indeed, the plain language of § 1692(a)(4) recognizes that an entity may acquire "ownership" through assignment or transfer of a debt to enable the entity to facilitate collection of the debt.  Where transfer of a secured interest in a debt and deed is made for this purpose, the Court may plausibly infer that the collecting entity is exercising its temporary ownership interest solely for the purpose of collecting a debt for another.

The Court's construction of § 1692(a)(4) is consistent with the Eleventh Circuit's construction in its recent decisions that have reversed District Court dismissal orders.  In these decisions, the Eleventh Circuit articulated the broad reach of this provision and comparable ones in connection with the FDCPA's remedial purpose.  *See, e.g.*, *Bourff v. Lublin*, 674 F.3d 1238 (11th Cir. 2012) (construing the allegations of the plaintiff's complaint to state a claim that the defendant law firm falsely identified a mortgage servicer as a creditor under § 1692a(4)); *Shoup v. McCurdy & Candler*, 465 F. App'x 882, 883-84 (11th Cir. 2012) (broadly applying *Bourff* as governing law and reversing the District Court's order of dismissal where the plaintiff's complaint alleged that the defendant law firm violated the FDCPA by identifying MERS as the "creditor" because MERS did not offer or extend credit to her and she owed no debt to MERS, although MERS had been assigned the note and deed as nominee for the lender); *Reese v. Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012*)* (holding that a law firm's communication seeking to enforce a security

interest is not exempt from the provisions of § 1692e because "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a 'debt' even if it is secured"); *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582 (11th Cir. 2012) (holding that while *Reese* dealt with the applicability of § 1692, its reasoning is governing authority for the principle that "an entity that regularly attempts to collect debts can be a 'debt collector' beyond § 1692f(6) of the FDCPA, even when that entity is also enforcing a security interest" in the foreclosure context).[7]

These Eleventh Circuit decisions eschew a hyper-technical interpretation of the FDCPA's provisions that would defeat the very purpose of the statute. The Court of Appeals' decision in *Bourff* is particularly instructive given the similar posture of that case to the instant one. In *Bourff*, Plaintiff's complaint alleged that the defendant law firm falsely identified Plaintiff's mortgage servicer BAC as a creditor in a collection letter, contending that "entities in BAC's position" are "specifically excluded from the definition of 'creditor' by the language of the FDCPA." *Id.* According to the complaint, BAC, like Nationstar in this case, had received an assignment of the security deed and debt when Plaintiff's loan was in default. *Id.* Under these circumstances, the District Court determined that BAC

---

[7] The Supreme Court has taken a similar approach in broadly construing the provisions of the FDCPA. *See, e.g.*, *Jerman v. Carlisle, McNeillie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010) (recognizing that a law firm's actions in violation of 15 U.S.C. § 1692g(a) as part of its effort to collect a mortgage debt on behalf of a client in the foreclosure context fell within the scope of the FDCPA's consumer protections and were not exempt by virtue of the bona fide error defense provided by 1692k(c)).

was a creditor and even if not, "the error in listing it as such was a harmless mistake in the use of the term because BAC had the power to foreclose on the property or otherwise to act as the creditor on the loan." *Id.* (record citation omitted). The reasoning underlying the District Court's decision was closely akin to that relied upon by Defendant here. In reversing that decision, the Eleventh Circuit decision stated that the identification of the "creditor" in such notices "is a serious thing" under the FDCPA and that Plaintiff's allegation that BAC received the assignment for the purpose of facilitating collection of a debt for another must be construed in the light most favorable to the Plaintiff. The Court therefore concluded that the statement that BAC was Plaintiff's "creditor" was sufficient to give rise to a plausible claim of false representation against the Defendant law firm, which was a "debt collector" as defined in § 1692a of the FDCPA. *Id.* at 1241.

The Magistrate Judge here viewed *Bourff* as distinguishable from the instant case because BAC had yet to initiate the foreclosure proceeding and the law firm did not argue the statutory construction urged here. (R&R, Doc. 13 at 17.) The Eleventh Circuit, however, clearly wrestled directly with the language contained in § 1692(a)(4) in determining that Plaintiff's complaint plausibly claimed that BAC should not be treated as a creditor. (*Id.* at 1241 (citing to the specific statutory language at issue in this case).) The timing of the law firm's letter announcing initiation of foreclosure to support its collection efforts has no talismanic effect in this analysis. Indeed, the sole distinction between *Bourff* and

11

the facts of this case is that in *Bourff,* the complaint alleged that the law firm's notice was sent one month before the alleged assignment of the security deed and debt to BAC.  However, as Magistrate Judge Anand points out in his R&R in a comparable case, the Eleventh Circuit "cited and appeared to place some reliance on the allegation that the servicer received the assignment, as in this case, 'while the Plaintiff's loan was in default, for the purpose of facilitating collection of such debt for another.'" *Hye Park v. Shapiro & Swertfeger, LLP*, No. 1:12-cv-1132-TWT-JSA, slip. op. at 14 n.3 (N.D. Ga. Jan. 9, 2013) (Anand, Mag. J.) (quoting *Bourff*, 674 F.3d at 1241), *approved and adopted*, (Feb. 19, 2013) (Thrash, J.).

Based on the allegations and incorporated exhibits to Plaintiff's Complaint, which must be construed in the light most favorable to Plaintiff, the Court finds plausible Plaintiff's specific allegations that Fannie Mae was the creditor of Plaintiff's debt and that Nationstar was solely acting as a servicer to facilitate the collection of a debt on Fannie Mae's behalf.  In making this assessment of plausibility on a case specific basis, the Court also uses its own judicial experience and common sense.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  Standard mortgage servicing practices, as reflected in the large volume of foreclosure cases regularly filed in this Court, including cases involving Fannie Mae, reveal the commonality of transfers of property to mortgage servicing entities solely for the purpose of enabling the

servicer's collection efforts on behalf of another, consistent with the exception clause contained in § 1692a(4).  Accordingly, based on the Court's review of the Complaint as well as its legal analysis of the provisions of the FDCPA, the Court finds that Plaintiff's Complaint plausibly states claims for relief under the FDCPA and that Defendant's Motion to Dismiss (Doc. 7) should be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Plaintiff's objections (Doc. 15) and **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation [Doc. 13].  Defendant's Motion to Dismiss [Doc. 7] is **DENIED**. This matter is **RETURNED** to the Magistrate Judge for further proceedings, consistent with this Order.[8]

**IT IS SO ORDERED** this 29th day of March, 2013.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**

---

[8] The Court **GRANTS** Plaintiff's Motion to Supplement Response in Opposition to Defendant's Motion to Dismiss [Doc. 18] and **GRANTS** Defendant's Motion to File Supplemental Brief [Docs. 21].  In addition, Defendant did not move to dismiss Plaintiff's class actions allegations specifically, and thus the Magistrate Judge did not reach the merits of these allegations. Instead, the Magistrate recommended that the Court dismiss as moot Plaintiff's class action allegations because he recommended that FDCPA claims be dismissed under Rule 12(b)(6), leaving no claims left to consider as a class action.  As the Court declines to adopt the Magistrate Judge's recommendation as to Plaintiff's FDCPA claims, the Court likewise **DECLINES TO ADOPT** his recommendation on Plaintiff's class action allegations.